UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE CINCINNATI INSURANCE COMPANY, ) ) ) ) Plaintiff, ) ) v. ) ) KT HEALTH HOLDINGS, LLC, and KT ) HEALTH, LLC, ) ) Defendants. ) ) | Civil Action No. 16-11722-FDS |

**MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND MOTIONS TO STRIKE**

**SAYLOR, J.**

This is a dispute concerning the scope of an insurance policy. Defendants KT Health Holdings, LLC, and KT Health, LLC, have a general liability insurance policy issued by plaintiff, the Cincinnati Insurance Company. Defendants manufacture and sell an athletic tape called KT Tape that is advertised to relieve pain and prevent injury during exercise. They are now defendants in a class action lawsuit alleging that they made false and misleading statements in advertising concerning the efficacy of KT Tape. That lawsuit also alleges a single count for personal injury arising out of skin irritation caused by KT Tape on behalf of the named plaintiff alone.

Plaintiff has moved for partial summary judgment seeking a declaratory judgment that the policy does not cover the class claims asserted in the underlying action. Plaintiff has also filed two motions to strike portions of declarations submitted by defendants in opposition to that motion. For the following reasons, plaintiff's motion for partial summary judgment will be

granted, and the motions to strike will be denied.

## I. Background

Unless otherwise noted, the facts set forth below are undisputed.

Defendants KT Health Holdings, LLC ("KTHH") and KT Health, LLC ("KTH") manufacture and sell a colorful elastic tape called KT Tape for use in sports and fitness activities. (Def. SMF Ex. 1, ¶¶ 4–8). Defendants advertise KT Tape as way to prevent injury and alleviate pain during exercise. (Def. SMF ¶¶ 40–43).

### A. The Underlying Action

On October 30, 2015, Alexander Vuckovic filed a class action lawsuit against KTHH, KTH, and KT Holdings, LLC. (Compl., *Vuckovic v. KT Health Holdings, et al.*, 15-cv-13696-GAO (Oct. 30, 2015)). In January 2016, Vuckovic amended the complaint to eliminate KT Holdings, LLC as a defendant. (First Amended Complaint, Pl. SMF Ex. C). The first amended complaint alleged three counts under state law for unjust enrichment, untrue and misleading advertising in violation of Mass. Gen. Laws ch. 266, § 91, and unfair and deceptive practices in violation of Mass. Gen. Laws ch. 93A, § 2. (*Id.* ¶¶ 57–74). It proposes to bring claims on behalf of all persons who purchased KT Tape in Massachusetts since the fall of 2011. (*Id.* ¶ 48). It did not assert any personal injury claims.

On July 7, 2016, Vuckovic filed a second amended complaint ("SAC") adding a single claim for personal injury arising out of redness and irritation caused by affixing KT Tape to his skin. (SAC, Pl. SMF Ex. A). That new claim applies to Vuckovic alone, while the original three counts are alleged on behalf of the class. (*Id.* ¶¶ 61–88).[1]

---

[1] The SAC states that the "claims asserted herein for physical injury to Plaintiff are not asserted as class claims, but only on Plaintiff's own behalf." (*Id*. ¶ 2 n.1).

In substance, the class claims allege that KT Tape does not work as advertised. The SAC alleges that defendants' statements in advertisements, use of photographs of Olympic athletes wearing KT Tape, and other marketing practices create the impression that KT Tape relieves pain and prevents injury during exercise. (*Id.* ¶¶ 3–18). It further alleges that those claims are "not supported by scientific evidence, and [are] not accepted by the medical community." (*Id.* ¶ 22). It states that defendants' "creative and aggressive marketing efforts are the only reason that [defendants] ha[ve] been able to sell so much of this product at premium prices" and that "consumers, including Plaintiff and other Class members, have paid a premium price for a product that does not perform as claimed and advertised." (*Id.* ¶¶ 7, 27).

### B. The Insurance Policy

The Cincinnati Insurance Company issued a commercial general liability insurance policy, EPP 0184626, to Lumos Inc. doing business as KT Tape for the period from March 1, 2013 – March 1, 2016. (Policy, Pl. SMF Ex. E). Defendants were added as insureds to the policy by endorsement. (*Id.*).

The policy provides, among other things, that Cincinnati will pay

> those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply . . . .

(Pl. SMF Ex. E § I.1.a). It defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these." (*Id.* § V.4).

### C. The Insurance-Coverage Dispute

On July 14, 2016, defendants mailed Cincinnati a letter to tender a claim under the policy concerning the class action. (Pl. SMF Ex. D). There is some dispute as to whether defendants

3

had already notified their local agent of the claim, and whether that notification constituted a proper notification of Cincinnati. (Def. SMF ¶¶ 45–49). In any event, Cincinnati is now providing a full defense to KTH and KTHH in the underlying action, subject to a reservation of rights, on the basis that the underlying action asserts a single claim for bodily injury: the skin irritation claim brought by Vuckovic individually. (Pl. Mem. at 2 n.1; Def. SMF ¶ 50; Compl. ¶ 5). It contends that the class claims do not seek damages for bodily injury, and therefore are outside the scope of coverage of the policy.

On August 24, 2016, Cincinnati filed the complaint in this action seeking a declaratory judgment that the policy does not cover the class claims in the underlying action, as well as other relief not relevant to the present motion. (Compl. at 14). On December 5, 2016, it amended the complaint.

On January 25, 2017, Cincinnati moved for partial summary judgment concerning the policy's coverage for the class claims asserted in the underlying action. On March 8, 2017, it filed two motions to strike affidavits submitted by defendants in opposition to the motion for partial summary judgment.

## II.     Analysis

### A.     Motion for Summary Judgment

#### 1.     Standard of Review

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir. 1990)). Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant . . . would permit a rational fact finder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted). In evaluating a summary judgment motion, the court indulges all reasonable inferences in favor of the nonmoving party. *See O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir. 1993). When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (quotations omitted). The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256–57.

### 2.  **Principles of Contract Interpretation**

Under Massachusetts and Utah law, an insurance policy is ordinarily construed according to general principles of contract interpretation. *See Brazas Sporting Arms, Inc. v. American Empire Surplus Lines Ins. Co.,* 220 F.3d 1, 4 (1st Cir. 2000); *Utah Farm Bureau Ins. Co. v. Crook,* 980 P.2d 685, 686 (Utah 1999).[2] The court begins with "the actual language of the polic[y], given its plain and ordinary meaning." *Brazas Sporting Arms, Inc.,* 220 F.3d at 4; *see also Utah Farm Bureau Ins. Co.,* 980 P.2d at 686 ("Courts interpret words in insurance policies according to their usually accepted meanings and in light of the insurance policy as a whole.").

---

[2] This case presents a potential choice-of-law issue that need not be resolved. Sitting in diversity, a federal court must apply the choice-of-law rule of the forum state (here, Massachusetts). *See Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 496 (1941). In insurance coverage disputes, Massachusetts courts apply a "functional choice-of-law approach" guided by the Restatement (Second) of Conflict of Laws. *Clarendon Nat. Ins. Co. v. Arbella Mut. Ins. Co.,* 60 Mass. App. Ct. 492, 495–96 (2004). Under that approach, courts consider "the interests of the parties, the States involved, and the interstate system as a whole." *Bushkin Assocs., Inc. v. Raytheon Co.*, 393 Mass. 622, 631 (1985). Here, the policy was issued in Utah to a Utah insured, but the underlying action is pending in Massachusetts and asserts claims under Massachusetts law. *See* Pl. Mem. at 8 n.3. The parties apparently agree that the choice-of-law question is not outcome-determinative in this case, and have cited to both Massachusetts and Utah law in arguing this motion. Rather than resolve the choice-of-law question, the Court will adopt the parties' approach and apply both Utah and Massachusetts law to the resolution of the present motion.

In interpreting a policy, the court must consider "what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." *Brazas Sporting Arms,* 220 F.3d at 4 (quoting *GRE Ins. Grp. v. Metro. Boston Hous. P'ship, Inc.*, 61 F.3d 79, 81 (1st Cir. 1995)); *see also LDS Hosp., a Div. of Intermountain Health Care, Inc. v. Capitol Life Ins. Co.*, 765 P.2d 857, 858–59 (Utah 1988) (finding that the ambiguity of a contract should be determined according to whether the meaning would "be plain to a person of ordinary intelligence and understanding"). Generally, ambiguities in policy language should be resolved in favor of the insured. *See City Fuel Corp. v. Nat'l Fire Ins. Co. of Hartford*, 446 Mass. 638, 640 (Mass. 2006) ("Doubts created by any ambiguous words or provisions are to be resolved against the insurer."); *Utah Farm Bureau,* 980 P.2d at 686 ("Ambiguities are construed against the drafter—the insurance company—and in favor of coverage.").

Under both Utah and Massachusetts law, the insured bears the burden to prove that coverage exists. *See B & T Masonry Const. Co. Inc. v. Public Service Mut. Ins. Co.*, 382 F.3d 36, 39 (1st Cir. 2004) (citing *Highlands Ins. Co. v. Aerovox Inc.*, 676 N.E.2d 801, 804 (Mass. 1997)); *Young v. Fire Ins. Exch.*, 182 P.3d 911, 919 (Utah App. Ct. 2015).

### 3. **"Bodily Injury"**

Cincinnati has moved for partial summary judgment on its claim seeking a declaratory judgment that that the policy does not cover the class claims in the underlying action because those claims do not allege "bodily injury." Defendants contend that the underlying action implicates bodily injury, because the advertising claims at issue concern KT Tape's pain-relieving and injury-preventing qualities.

The policy provides coverage only for "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage . . . .'" Pl. SMF Ex. E § I.1.a.

The policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these." *Id.* § V.4.

The complaint does not allege direct harm to the class plaintiffs "because of bodily injury." In essence, the class claims in the SAC allege that defendants made false and misleading statements in advertising KT Tape, and that consumers paid a premium for the Tape because of those statements. The only allegations of direct harm to the class members in the SAC are contained in two paragraphs:

> Plaintiff and the other members of the proposed Class have paid[] a price premium for KT Tape over traditional athletic tape. [Defendants] ha[ve] used deceptive claims regarding the purported benefits of KT tape to charge a premium approximately ten times the price of traditional athletic tape. . . .
>
> [Defendants'] false, deceptive and misleading representations about the pain-relieving and injury-treating properties of KT Tape were and are material; there would be no reason for a consumer to purchase a KT Tape Product and pay a premium price for it (over and above the price of traditional athletic tape) if not for the claims and representations about KT Tape's ability to relieve pain and treat a variety of injuries.

SAC ¶¶ 29–30. Those allegations focus on the economic harm of having paid a price premium for something that did not work as advertised. The SAC is devoid of any allegation that class members, other than Vuckovic, actually experienced pain or physical injury while wearing KT Tape. To the contrary, the SAC states, "[t]he claims asserted herein for physical injury to [Vuckovic] are not asserted as class claims." SAC ¶ 2 n.1.

The causes of action brought by the class provide further support for the conclusion that the class allegations seek only economic remedies to redress economic harms. The SAC asserts two class counts for money damages: (1) unfair and deceptive practices in violation of Mass. Gen. Laws ch. 93A, § 2 and (2) unjust enrichment.[3] Under both counts, the essential harm that

---

[3] The SAC also alleges a claim for untrue and misleading advertising in violation of Mass. Gen. Laws ch. 266, § 91. That statute authorizes only injunctive relief, not money damages. Mass. Gen. Laws ch. 266, § 91.

must be shown is economic in nature.

First, courts have found that chapter 93A claims asserting similar harms to those at issue here alleged economic injury. For example, in *Kwaak v. Pfizer*, 71 Mass. App. Ct. 293, 294 (2008), the plaintiff in a proposed class action alleged a chapter 93A violation against the manufacturer of Listerine mouthwash, contending that the manufacturer claimed the mouthwash was "as effective as floss" but lacked evidence to support that claim. The plaintiff did not seek damages based on any injury to health, but instead based on the fact that Listerine had "an actual value at the time of purchase less than the value paid for the product." *Id.* at 296. The court characterized that claim as alleging "economic injury" under chapter 93A. *Id.* at 299.

Similarly, in *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 338 (D. Mass. 2015), *aff'd*, 809 F.3d 78 (1st Cir. 2015), the plaintiff in a proposed class action brought a 93A claim against the manufacturer of "Vibram FiveFingers footwear," contending that it made "representations of health benefits in advertising and marketing th[at] footwear, that these health benefits were not supported by scientific evidence, that [it] knew that the scientific evidence did not support such benefits, and that the advertising and marketing was false and deceptive." The court found that while a plaintiff may recover under chapter 93A for both economic and non-economic losses, the claim at issue was "one of economic loss: that the plaintiffs would not have purchased the footwear had they known it would not provide the advertised health benefits, or that the footwear was not worth what the plaintiffs paid for it." *Id.* at 338, 344 (citing *Ruiz v. Bally Total Fitness Holding Corp.,* 496 F.3d 1, 5 (1st Cir. 2007)).

Second, a claim for unjust enrichment is based in contract law and is characteristically economic in nature. The remedy for a claim of unjust enrichment is restitution of the benefit conferred; here, the purchase price. *See Metro. Life Ins. Co. v. Cotter*, 464 Mass. 623, 644

(2013). Thus, both class causes of action for damages seek economic relief, as opposed to compensation for bodily injury.

Despite the lack of any direct class allegation of bodily injury caused by KT Tape and the essentially economic nature of the remedies sought, defendants contend that bodily injury is implicated in the SAC by inference. They argue that the underlying action seeks damages arising out of allegedly false claims in defendants' marketing materials suggesting that users could avoid injury and pain by using KT Tape during exercise. If these statements are false, they argue, the implication is that users experienced injuries and pain while using KT Tape, thereby sustaining bodily injury. However, courts in other jurisdictions have held that class action lawsuits seeking compensation for the economic injury of having paid premium prices for products that do not perform as advertised do not allege damages "because of 'bodily injury'" under general liability policies. *See, e.g., HPF, L.L.C. v. Gen. Star Indem. Co.*, 338 Ill. App. 3d 912, 918 (2003).[4]

In *HPF, LLC v. General Star Indemnity Company*, the court considered an insured's claim for coverage under a policy that contained language that is identical to the language at issue here. *See id.* at 916. The insured herbal supplement manufacturer was a defendant in a class action alleging that it made misleading claims in marketing materials that suggested that a supplement had "been proven safe and effective for the treatment of obesity." *Id.* at 914. As here, the class plaintiffs in the underlying action sought disgorgement of profits and requested that the court order restitution to consumers who had purchased the product, as well as other

---

[4] *See also Hypoguard USA, Inc. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 4236427, at *4 (Minn. Ct. App. Dec. 4, 2007) (finding no coverage under general liability policy covering for claims "for bodily injury" where complaint in an underlying class action asserted that but for the insured's concealment of certain facts, members of the class "would not have purchased [the insured's] blood glucose monitors or paid as much for the product as they did," because the injury alleged is "the purchase price of [the insured's] products and is neither a bodily injury nor a personal injury within the meaning of the policy").

equitable relief. *See id.* at 914–15.  The court found that "[d]espite [the insured's] characterization that the [class action] complaint generally alleges that [the supplement was] not safe," there was not a "single allegation that [the insured's] herbal products caused bodily injury or even that they *may* cause bodily injury." *Id.* at 917.  Instead, the court found that "the essence of the . . . complaint is that [the insured] misrepresented that its herbal products were *proven* safe and effective for the treatment of obesity when, in fact, those products had not been so approved." *Id*.

Here, the SAC asserts that "numerous recently published, peer-reviewed scholarly articles reveal[] the ineffectiveness and useless nature of [KT] tape," and that the purported health benefits are "not supported by scientific evidence, and [are] not accepted by the medical community." SAC ¶¶ 22–23.  As in *HPF,* the essence of the class allegations is that defendants' marketing claims are false—not because class members have actually suffered bodily injury, but because they have not been proved valid by the available scientific evidence.

In sum, the class allegations in the SAC do not allege a claim for bodily injury and therefore do not seek "damages because of 'bodily injury.'" Pl. SMF, Ex. E § I.1.a. Accordingly, there is no coverage under the policy for the claims asserted in the class action. Plaintiff's motion for partial summary judgment will therefore be granted.

**B.     Motions to Strike**

Plaintiff has filed two motions to strike portions of declarations submitted by defendants in opposition to the motion for partial summary judgment.  (Docket No. 53, 54).  The motions concern portions of the declarations of Ted Forcum and Peter Delahunt.  Plaintiff contends that those declarations present information that is irrelevant to the present motion.  While the Court did not rely on those declarations in ruling on the motion for partial summary judgment, the

information contained therein is not so irrelevant as to be struck on that basis alone.

Accordingly, plaintiff's motions to strike the Forcum and Delahunt declarations will be denied.

### III.     Conclusion

For the foregoing reasons, plaintiff's motion for partial summary judgment is GRANTED.  (Docket No. 34).  Plaintiff's motions to strike the Forcum and Delahunt declarations are DENIED.  (Docket No. 53, 54).

**So Ordered.**

                                                      /s/  F. Dennis Saylor
                                                    F. Dennis Saylor IV
                                                    United States District Judge

Dated: March 27, 2017